**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

JASON TRADOR

v. CRIMINAL ACTION NO. 3:23-00117
CIVIL ACTION NO. 3:26-00509

UNITED STATES OF AMERICA

**MEMORANDUM OPINION AND ORDER**

Before the Court is Petitioner Jason Trador's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 141, Pet'r's Mot). For the reasons stated below, the Court **DENIES** the Motion.

**BACKGROUND**

A jury convicted Mr. Trador of knowingly making materially false statements to federal agents, knowingly making false statements to influence the United States Department of Housing and Urban Development (HUD), and willfully overvaluing property in a Federal Housing Administration (FHA) loan application. *See generally* Superseding Indictment, *United States v. Trador* (No. 3:23-cv-00117-1), ECF No. 28; Jury Verdict, *Trador* (No. 3:23-cv-00117-1), ECF No. 84.

Evidence at trial showed Mr. Trador applied for an FHA loan. *United States v. Trador*, CRIM. A. NO. 3:23-00117, 2024 WL 3524032, at *1 (S.D. W. Va. July 24, 2024). Under FHA rules, a borrower is ineligible for a loan if they have a delinquent federal-tax debt, unless the borrower enters a valid payment plan and timely makes three monthly payments. *Id.* Prepayments on a tax debt do not qualify. *Id.* When Trador applied for his loan, he had a delinquent federal-tax debt for the 2016 tax year. *Id.* The evidence showed Trador made two $150 prepayments to the

Internal Revenue Service on July 26 and August 9, 2018 and, afterwards, on August 15, 2018, he set up a payment plan with the Internal Revenue Service. *Id.* However, Trador never fulfilled the requirements necessary under the payment plan to become eligible for an FHA loan before the closing on his home in September 2018. *Id.*

Despite his illegibility, Mr. Trador submitted a series of false documents to a loan processor to get his loan approved. *Id.* These documents included altered bank statements showing Trador had more money in his accounts than actually existed. *Id.* He also deleted insufficient-funds fees from his bank statements and added a line-item to his July statement falsely representing a payment was made to the "US Dept Treasury" in the amount of $8,151.82. *Id.* Defendant also submitted to the loan processer an altered IRS tax transcript for the 2016 tax year falsely showing he had paid off his tax debt. *Id.* On May 6, 2022, federal agents interviewed Defendant regarding the false documents. *Id.* Defendant denied any knowledge or involvement in altering the documents. *Id.*

Mr. Trador appealed, arguing the evidence was insufficient to support his convictions and claiming he received ineffective assistance of counsel. *See United States v. Trador*, No. 24-4417, 2025 WL 2375357, at *1 (4th Cir. Aug. 15, 2025) (per curiam). The Fourth Circuit affirmed the jury's verdict. *See id.* It also noted that "an ineffective assistance of counsel claim 'should be raised, if at all, in a 28 U.S.C. § 2255 motion.'" *Id.* at *2 (quoting *United States v. Faulls*, 821 F.3d 502, 508 (4th Cir. 2016)).

Mr. Trador has now filed a § 2255 motion. He claims that he received ineffective assistance of counsel and that prosecutorial misconduct tainted his trial. *See* Pet'r's Mot. 5–6.

## ANALYSIS

### A. Ineffective Assistance of Counsel

28 U.S.C. § 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"[T]o have his sentence vacated based on ineffective assistance of counsel, a petitioner must prove both: '(1) deficient performance and (2) prejudice.'" *Moon v. United States*, 181 F. Supp. 2d 596, 598 (E.D. Va. 2022) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)). "To prove deficient performance, a petitioner must show that counsel's representation fell below 'an objective standard of reasonableness,' which is defined as 'reasonableness under prevailing professional norms' and 'considering all the circumstances.'" *Id.* (quoting *Lockhart*, 506 U.S. at 688). "In considering whether an attorney's performance was deficient, a court should be 'reluctant to second guess the tactics of trial lawyers.'" *Id.* (quoting *Goodson v. United States*, 564 F.2d 1071, 1072 (4th Cir. 1977) (per curiam)). "To prove prejudice, a petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Mr. Trador's Motion claims Trador told his trial attorney, Jason Goad, "that documents existed that would prove" Trador's innocence. Pet'r's Mot. 5. According to Trador, these documents are (1) a letter showing that Trador's FHA loan was conditionally approved before he sent the fraudulent documents, (2) "Fannie Mae Underwriting Findings that show no additional bank information was required to close the loan," (3) an email in which a HUD underwriter indicated Trador's loan would have been approved without the inflated bank balances, and (4) a study showing many people receive FHA loans despite failing to comply with the tax-delinquency

rules. *See id.* Trador claims Mr. Goad did not introduce any of these documents at trial. *See id.* at 14.

The Court will not vacate Mr. Trador's sentence on this basis. Trador's Motion does not include any evidence suggesting these documents exist or say what Trador claims. *See Moon*, 18 F. Supp. 2d at 598 ("[T]o prevail under § 2255, a petitioner collaterally attacking his conviction or sentence must prove by a preponderance of the evidence that his sentence was imposed in violation of the United States Constitution or laws . . . ."). Even if the documents existed, it is not clear why they would have helped Trador's case. Trador claims he "knew there would be no benefit in submitting fraudulent documents" since the underwriter had not asked him for bank statements. Pet'r's Mot. 14. But the evidence at trial showed Trador did, in fact, submit fraudulent documents. His only plausible reason for doing so was increasing the chances of approval.

Mr. Trador also claims Mr. Goad failed to call witnesses who would have "discredited" one of the Government's witnesses. *Id.* at 5. But he offers no evidence indicating who those witnesses are or what they would have said at trial.

The Court cannot conclude Mr. Goad acted unreasonably. Nor can it find there is a reasonable probability the jury would have acquitted Trador if Goad had introduced the additional documents or called the witnesses Trador references.

**B. Prosecutorial Misconduct**

Mr. Trador also alleges the Government allowed one of its witnesses, Special Agent Andrew Meyers, to testify falsely during trial. *See id.* at 6. At trial, Meyers said he began investigating Trador because Trador's loan records "ca[ught] [his] eye." ECF No. 98, at 30. Trador claims this is false—that Meyers actually began investigating after a third party audited Trador's "loan file . . . ." Pet'r's Mot. 6.

"The failure to raise a claim on direct appeal constitutes a procedural default barring its presentation in a § 2255 petition, unless the petitioner can demonstrate either cause and prejudice, or actual innocence." *United States v. Gill*, 652 F. Supp. 3d 567 (D. Md. 2023), *rev'd on other grounds*, No. 23-6273, 2026 WL 195412 (4th Cir. Jan. 26, 2026) (per curiam). Mr. Trador did not raise prosecutorial misconduct on direct appeal. He asserts his appellate counsel did not raise the issue because he "only met and talked to [Trador] briefly" and therefore "was not aware of" the basis for a prosecutorial-misconduct claim. But Trador has not offered any evidence supporting this assertion.

Even if Mr. Trador had raised the prosecutorial-misconduct claim on direct appeal, the Court would reject it. Trador has not pointed to any evidence indicating a third party audited his loan application, nor any evidence showing Meyers discovered Trador's fraud as a result of that audit. Further, the catalyst for Meyers's investigation is irrelevant to Trador's guilt or innocence. There is no reason to believe a jury would have acquitted Trador if it learned that an audit sparked Meyers's investigation. The Court will not grant Trador's Motion on this basis.

## CONCLUSION

The Court **DENIES** Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 141).[1]

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshal Service.

[1] Since "the motion and the files and records of the case conclusively show that [Mr. Trador] is entitled to no relief, the Court will not hold a hearing on the Motion. 28 U.S.C. § 2255(b).

ENTER: August 20, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE